IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL S. OWL-FEATHER GORBEY | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-18-2754 (Consolidated Case: CCB-18-4027) |
| ANGELA DUNBAR, WARDEN TIMOTHY S. STEWART, MS. STAR, MR. SAMPLE, MR. MUBARAK, MS. HAMELTON, MR. GERA, JANE DOE, MR. McDONALD, MR. SCHNIDER, MR. JONES, IAN CONNERS, | * * * * * * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

These consolidated civil actions concern self-represented Plaintiff Michael S. Owl-Feather Gorbey's claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which he filed in forma pauperis. Because Gorbey has more than three strikes[1] under the Prisoner Litigation Reform Act, he must establish that the claims asserted concern an imminent threat of physical harm or pay the full $400 filing fee. If such a threat is not adequately established Gorbey must pay the remainder of the filing fee or the case will be

---

[1] *See Gorbey v. U.S.A., et al.*, Civ. Action 1:08cv332 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv334 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv339 (D. Md. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 2:09cv313 (S.D. W.Va. 2009), *Gorbey v. U.S.A., et al.*, 1:09cv262 (D. D.C. 2009), *Gorbey v. U.S.A., et al.*, Civil Action 2:08cv121 (N.D. W.Va. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv649 (D. D.C. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv650 (D. D.C. 2008), *Gorbey v. District of Columbia, et al.*, Civil Action 1:09cv261 (D. D.C. 2009), *Gorbey v. District of Columbia*, Civil Action 1:10cv1751 (D. D.C. 2010), *Gorbey v. State of Virginia, et al.*, Civil Action 2:11cv164 (E.D. Va. 2011).

dismissed without prejudice and may not be refiled without payment of the full fee at the time it is filed. *See* 28 U.S.C. § 1915(g).

In screening the original complaint filed in this case this Court limited the claims to which counsel for the Federal Bureau of Prisons (BOP) must respond. ECF 12. Gorbey's claims regarding his assignment to a top bunk and exposure to black mold were deemed sufficient to warrant a response from counsel regarding whether Gorbey faces an imminent threat of physical harm as a result of those two conditions of his confinement. *Id.* at pp. 3-4. This Court further found that Gorbey's claims that he was denied medical care in the past for alleged injuries were insufficient to establish an imminent threat of serious physical harm. *Id.* at p. 4, *see Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996).

Counsel's response to Gorbey's request for injunctive relief indicates that he does not qualify for assignment to a bottom bunk or medically prescribed shoes and that the "black mold" he was allegedly exposed to was not toxic and was remediated expeditiously. ECF 18. Gorbey has provided further argument that his health is endangered by his continued assignment to a top bunk as evidenced by injuries sustained in falls during attempts to climb down or up to the bunk; asserts that he is in danger of contracting pneumonia if he is not provided with medically ordered work-boots which he qualified for in another BOP facility; and attempts to resurrect other claims regarding glaucoma treatment and to amend this proceeding to include matters raised in separate civil actions that have already been dismissed. For the reasons set forth below, Gorbey's requests for injunctive relief must be denied, and this Court's prior Order granting Gorbey's Motion to Proceed in Forma Pauperis must be vacated. Gorbey will be provided additional time period to time to pay the remainder of the filing fee due.

## BACKGROUND

### 1. Civil Action RDB-18-2754

In his Motions for Injunction (ECF 9 & 11) Gorbey states he suffers from injuries to his right knee, wrist and shoulder as well as his left foot, ankle and wrist. He asserts that these injuries, though fully healed, require his assignment to a lower bunk and cites injuries he sustained from falls while assigned to a top bunk in 2015 at FCI Edgefield; in 2016 at FCI/USP Leavenworth; and current injuries he sustained at FCI Cumberland in 2018. *Id.* He claims his prior injuries have made him unable to support his own weight, causing him to fall when climbing to the top bunk. ECF 11 at p. 3.

Gorbey explains that in 2015, he fell and injured his left wrist; in 2016 he fell fracturing his foot, and tore ligaments in his left ankle and wrist; and on September 21, 2018, he fell injuring his testicles, leg, and foot which required outside emergency surgery. ECF 11 at p. 3. Despite that history, Gorbey claims that BOP staff refuse to provide him with a bottom bunk assignment to prevent any future falls and injuries.[2]

Gorbey adds that his work assignment at FCI-Cumberland is in landscaping, which requires him to spend three-quarters of his day outdoors. ECF 11 at pp. 5-6. He asserts he consistently gets his feet wet and cannot wear "regular institutional hard toe boots" because of the deformities to his feet and ankles. *Id.* at p. 6. He states he requires "medical or alternative shoes" and adds that requiring him to have wet feet subjects him to the possibility of "serious sickness that could lead to pneumonia and death." *Id.* He seeks assignment to a lower bunk and to be provided "medical shoes." ECF 11 at p. 8.

---

[2] Gorbey's attempt to add a claim for injunctive relief regarding the manner in which BOP staff are calculating his security score for purposes of his institutional assignment will not be addressed as the claim does not concern an imminent threat of danger. *See* ECF 11 at p. 4 (Gorbey's discussion of alleged errors in security score).

3

In their response to Gorbey's Motions for Injunction, Defendants move to vacate this Court's Order granting leave to proceed in forma pauperis and assert that he has not stated an adequate claim of imminent threat of physical harm as required by 28 U.S.C. § 1915(g). ECF 18. They explain that Gorbey received an initial health evaluation on April 23, 2018, when he arrived at FCI Cumberland. ECF 18-2 at p. 5, ¶ 9. At that time, it was noted that Gorbey had a history of orthopedic injuries and complaints but all fractures he had sustained were healed. *Id.*

Defendants explain that Gorbey is not assigned to a lower bunk because he doesn't meet the medical requirements for a lower bunk pass. ECF 18-2 at p. 9; ECF 18-3 at pp. 22-24. A lower bunk assignment requires "[c]omprehensive medical evaluation and documentation" that supports the following criteria:

1. Paraplegic or Hemiplegic (wheelchair, canes or crutches) (M/T)
2. Seizure disorder (M)
3. Documented peripheral neuropathy stage III (M)
4. Arm or leg prosthesis (M)
5. Patients with foot drop and/or AFO brace (T)
6. Arm or leg casts (90 days after cast removal) (M)
7. Severe DJD/OA/Osteoperosis/Post-op ORTHO (30-90 days) (T)
8. Obesity [Body Mass Index greater than 40] (T)
9. Laminectomy (up to 180 days post-operative) (M)
10. Patients on multiple psychotropic medications (T)
11. Patients on Coumadin/Lovenox or Hemophilia (M)
12. Blind (M)
13. C-PAP machines/Oxygen dependent (M)
14. Recent Hospital Discharges (up to 90 days) (T)
15. Parkinson's Disease and Multiple Sclerosis (M)
16. Congenital deformity resulting in inability to use extremity (M)
17. Pregnancy and post-partum for 45 days (T)
18. Hemodialysis/Peritoneal Dialysis/End-Organ Disease/NYHA 3 or 4 (M)
19. Total Joint Replacement in consultation with Physical Therapist (T)
20. Vestibular dysfunction documented by ENT consultation (T)

ECF 18-2 at p. 13 (Lower Bunk Criteria). If an assignment is designated as temporary,[3] the assignment is reviewed for possible renewal every 180 days. *Id.* A mandatory[4] lower bunk assignment is reviewed annually for possible renewal. *Id.* at p. 14. When an inmate arrives at FCI-Cumberland with a lower bunk assignment, the assignment must be validated at the time the inmate is screened and, if assigned, a new and updated Medical Duty Status form following evaluation at the receiving institution is required. *Id.*

Gorbey had a lower bunk pass issued from the institution from which he was transferred when he arrived at FCI Cumberland. He also had alternate institutional shoes which were provided based on a December 17, 2015 x-ray depicting a bunion deformity greater than 22 degrees, qualifying him for alternate shoes under the prior institution's local policy variance.[5] ECF 18-2 at p. 5, ¶ 9.

On May 4, 2018, when Gorbey was evaluated by health services personnel, he requested a bottom bunk and braces for his ankle, knee, and wrists. ECF 18-2 at p. 6; ECF 18-3 at pp. 15-18. It was determined that Gorbey did not meet the criteria for either alternative institutional shoes or a lower bunk assignment. ECF 18-3 at p. 18. Gorbey's claimed deformity is a hammertoe, a common condition in the inmate population which does not require alternate footwear and which the physician determined was not significant. *Id.* at p. 12. Conditions that require alternative footwear involve significant deformities, such as a partial amputation or congenital anomalies, or impaired sensation that could contribute to serious foot injury. ECF 18-2 at pp. 3-4, ¶ 7.

---

[3] Designated in the list above with the notation: (T).

[4] Designated in the list above with the notation: (M).

[5] National BOP policy and the policy in place at FCI Cumberland does not embrace that local policy. ECF 18-2 at p. 9, n. 2.

Examination of Gorbey's right foot revealed "no evidence of wound/callous/infection/blister observed," despite his report that the institutional boots issued hurt his feet and his toenail. ECF 18-3 at p. 23. Gorbey has chosen not to wear the institutional boots issued to him; Defendants note that alternative footwear is available for purchase in the prison commissary. ECF 18-2 at p. 7, ¶ 12.

Although Gorbey does not meet the formal requirements for a lower bunk pass, he was provided a one-month lower bunk pass on May 15, 2018, based on his reported ongoing post-fracture pain to his right wrist. ECF 18-2 at p. 7, ¶ 12. That pass, however, was not issued for a chronic condition because there was no evidence that Gorbey had decreased strength or a limited range of motion requiring such an assignment. ECF 18-2 at p. 7, ¶ 12; ECF 18-3 at p. 24 ("At most one additional month of bottom bunk pass will be granted but not for chronic issue.").

Gorbey's September 25, 2018 injury occurred after he asked to move to a different cell in his unit; he did not ask for a lower bunk when requesting the move. ECF 18-1 at p. 4 (Declaration of David Holler) & p. 28 (Inmate Request Form). Gorbey was moved as requested and assigned to an upper bunk. *Id.* at p. 4 & 19 (Sept. 18, 2018 assignment "House C/Range 07/ Bed 211U"). He reported to health services that the chair he was using to assist him in getting down from his bunk tipped, causing him to slip and the chair "went into" his right groin. ECF 18-2 at pp. 7-8, ¶ 14; ECF 18-3 at p. 35. To treat the injury, Gorbey was provided "scrotal support," Tylenol, and a same-day ultrasound. ECF 18-3 at p. 35; ECF 18-4 at pp.47 (medical record indicating ultrasound completed Sept. 25, 2018). After it was determined that Gorbey had sustained a hematoma, which was successfully treated by a urologist, the need to perform a CT scan to rule out a hernia was eliminated.[6] *Id., see also* ECF 18-2 at p. 8, ¶ 15. On September 27, 2018, the hematoma, which

---

[6] Gorbey's assertion that the failure to provide a CT scan is a denial of treatment (ECF 24) is based on an observation made in the ultrasound report indicating that a "right inguinal mass is seen extending into the right scrotum

6

had become infected, was drained by the urologist. ECF 18-5 at pp. 4-5. The surgical site was monitored with dressing changes until October 11, 2018, when Gorbey reported he no longer needed supplies for dressing changes. ECF 18-4 at pp. 13-14.

On October 11, 2018, Gorbey again requested a lower bunk when he was seen by a primary care provider, citing his chronic pain issues and prior injuries to his right shoulder, right wrist, and left ankle weakness as the basis for his request. ECF 18-3 at p.52. The request was denied based on Gorbey's demonstrated ability to walk normally and the lack of any limits in his range of motion with his right wrist as evidenced by his ability to disrobe, manipulate buttons on his shirt and pants, and carry numerous papers in envelopes. *Id.*

Food Service Administrator Richard McDonald provides a declaration under oath concerning the black mold found in the hood of the dish machine located in the kitchen at FCI-Cumberland. ECF 18-6. He states that in July of 2018, it was determined that the machine was not functioning properly and upon inspection it was discovered that there was mold in the hood of the machine. *Id.* at p. 2, ¶¶ 5-6. The mold was analyzed and determined to be non-toxic, but the dish room was closed anyway to address the problem and food was served on Styrofoam trays until the problem was resolved. *Id.* at ¶ 6. The machine was cleaned and repaired; parts of the ceiling were also replaced as a precaution. *Id.* McDonald states that Gorbey has never worked in food service during his tenure at FCI-Cumberland. *Id.* at ¶ 7.

In addition, Kerry Wolford, the Environmental and Safety Compliance Administrator at FCI-Cumberland provides a declaration under oath. ECF 18-7. Wolford is responsible for "planning, directing and developing the safety and environmental health and industrial hygiene

---

most likely representing a hernia rather than hematoma" and recommending a CT confirmation. ECF 24-1 at p. 1. However, that provisional observation was not confirmed by the urologist who examined him later. There has been no failure to treat Gorbey for this injury.

7

programs" at the prison. *Id.* at p. 2, ¶ 2. Wolford confirms that when the mold was found in July of 2018 in the dish room of the kitchen, the area was secured with tape and plastic. *Id.* at p. 3, ¶ 5. On July 16, 2018, a certified mold inspector examined the mold and it was tested by a certified laboratory on July 19, 2018. *Id.* at ¶ 6. The examiner's report confirms the mold was not toxic; rather it was "Penicillium, a nontoxic type of mold frequently found in moist areas, such as kitchens and bathrooms." *Id.* at ¶ 7, *see also* ECF 18-7 at pp. 6-8 (examiner's report with explanation of FES 1 score). Wolford further explains that on August 15, 2018, staff from Prestige Carpet Cleaning and Restoration provided mold remediation, set up containment as needed, cleaned ceiling grids, used a HEPA vacuum to clean the walls and floors, applied anti-mildewcide to the walls and floors, and cleaned the dishwasher ventilation system. ECF 18-7 at p. 3, ¶ 8, *see also* ECF 18-7 at pp. 15-20. The dish room was reopened to inmates and staff after clean-up was complete and Wolford is unaware of any new discovery of mold. ECF 18-7 at p. 4, ¶ 11.

In his Opposition Response, Gorbey asserts that Defendants have failed to properly respond to this Court's Order to Show Cause and in so doing have waived their right to "argue or object." ECF 24 at p. 1. In substance, Gorbey claims he sustained an injury on October 28, 2018, which happened while he was climbing from the top bunk. He injured his right foot again and states this is further evidence that he has adequately alleged an imminent threat of physical harm. *Id.* at p. 2. He further claims he did not receive appropriate medical care for the injury, but fails to describe the nature of the alleged injury to his right foot. *Id.* at p. 3.

Gorbey also takes issue with Defendants' failure to address his allegations concerning failure to address his glaucoma concerns and claims Defendants did not respond to his claim

regarding medical shoes.[7] *Id.* at pp. 3-4. Gorbey does not dispute that he was not permitted to be in the "dish room" of the chow hall where black mold was admittedly found; rather, he asserts he had some of the general symptoms that exposure to black mold may cause, *e.g.*, sore throat, coughing, and a rash.[8] *Id.* at pp. 5-6. Gorbey also takes issue with Defendants' failure to address his allegation that he was questioned by Mr. Schnider about inmate misconduct in the prison chow hall where other inmates could hear the conversation. *Id.* at p. 7; *see also* ECF 24-1 at pp. 23-24. He cites other instances where inmates were harmed by other inmates because they were viewed as informants and claims he does not have to wait until harm occurs to establish an imminent threat of harm. *Id.*

In their Reply, Defendants assert that Gorbey's claimed fall on October 28, 2018, does not establish an imminent threat of harm because he provides no information about the cause of his fall, nor does he provide any evidence to support the bald claim that he suffered a serious injury. ECF 25. Further, BOP records do not reflect that Gorbey reported a fall on October 28, 2018. ECF 25-1 at p. 3, ¶ 4. He reported to emergency sick call on the following day, claiming he fell from the top bunk the night before and would not allow the nurse on duty to assess him physically, insisting instead that his primary care provider examine him. *Id.* at ¶ 5. Gorbey's primary care provider was unavailable at the time. *Id., see also* p. 6 (medical record of encounter). On November 2, 2018, Gorbey was evaluated by his primary care provider for complaints of injuries to his right foot and knee which he attributed to a fall on September 21, 2018, and an injury to his

---

[7] Neither claimed deficiency is accurate. This Court did not direct counsel to address Gorbey's claim regarding glaucoma treatment in light of the fact that the claim, as stated in the complaint, did not allege an ongoing future threat of harm and Defendants addressed Gorbey's claim regarding medically prescribed shoes. ECF 18.

[8] Gorbey underwent a CT Scan for evaluation of a calcified granuloma in his lung in February of 2017. ECF 18-3 at p. 29. On August 2, 2018, Gorbey was offered a follow-up CT Scan as recommended by the radiologist, but he refused to undergo the examination. *Id.* Gorbey's rash, which occurred after the surgery to drain the hematoma on his testicle, was determined to be Ringworm and was treated with an anti-fungal cream. ECF 18-3 at pp. 48-49.

9

left shoulder which he attributed to the recent fall from his bunk. *Id.* at ¶ 6. Although Gorbey exhibited no evidence of injuries in the areas specified other than minor tenderness and increased size in the left shoulder, an x-ray was ordered because of Gorbey's claim that each joint was painful. *Id.* and p. 9 (medical record). The x-rays, completed on November 7, 2018, showed no injuries. *Id.* at ¶ 7; and pp. 12-15 (radiology reports).

Despite Gorbey's assertion that the mold remediation was not completed until October of 2018, it was in fact remediated on August 15, 2018. *See* ECF 18-6 and 18-7. Additionally, the mold was not toxic. His claim that he suffered dermatitis as a result of mold exposure is belied by the medical record he submits in support of the claim; medical staff assessed the dermatitis in connection with the injury to his groin sustained in his September 21, 2018 fall, more than a month after the non-toxic mold was removed. *See* ECF 24 at Ex. 9.

### 2. Civil Action CCB-18-4027

In this consolidated civil case, originally filed in the United States District Court for the District of Columbia, Gorbey is suing Ian Connors, who is the BOP's Central Office Inmate Appeals Administrator. *Gorbey v. Connors*, Civil Action CCB-18-4027 at ECF 1, p. 1. Gorbey alleges that his complaints regarding the denial of his assignment to a lower bunk; being forced to have constantly wet feet; and his exposure to black mold were sent to Connors via the administrative remedy procedure and Connors simply "rubber stamped" the denial of any relief on his claims. *Id.* at pp. 2-5. He adds that Connors has ignored his claims regarding glaucoma treatment, placing him in danger of becoming blind. *Id.* at p. 6. Gorbey also claims that he is denied medication for treatment of his pain associated with his past orthopedic injuries to his wrist, ankle, and foot. *Id.*

The verified medical records as well as the declarations under oath submitted in response to Gorbey's Motions for Injunction filed in Civil Action RDB-18-2754 establish that Gorbey's claim against Connors does not state an imminent threat of physical harm. Gorbey's medical records indicate he has received pain medication and, to the extent it is available for purchase in the commissary as an over-the-counter medication, he has not been prevented from purchasing it. Civil Action 18-2754 at ECF 18-3 at pp. 7, 8, 14, 18, 22. Further, Gorbey receives prescribed eye drops for his glaucoma. ECF 18-3 at pp. 2, 11, 18.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

The requirement that Gorbey must establish that his claims state an imminent threat of physical harm under 28 U.S.C. §1915(g) is not unlike what he must demonstrate to be entitled to

injunctive relief inasmuch as the potential for harm must be neither remote or speculative, but actual and imminent. The imminent danger exception to the three strikes rule is to be construed narrowly and reserved for civil actions that state genuine emergencies where time is of the essence. *See Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). "The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). "Vague, speculative, or conclusory allegations are insufficient to invoke the exception of § 1915(g); rather, the inmate must make 'specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury.'" *Johnson v. Warner*, 200 Fed. Appx. 270, 272 (4th Cir. 2006) quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir.2003).

Failing to satisfy the §1915(g) standard, litigants such as Gorbey who have accumulated more than three strikes, are denied the privilege of proceeding with their claims in forma pauperis and must pay the full $400 filing fee before the case may proceed. Additionally, a fee-paid prisoner civil complaint is still subject to this Court's screening obligation under 28 U.S.C. § 1915. Prisoner complaints that do not state a cognizable claim for relief, is frivolous or malicious, or seeks relief from a defendant who is immune from such relief must be dismissed and a "strike" issued pursuant to 28 U.S.C. §1915(e)(2).

## ANALYSIS

Gorbey has failed to establish that he is either in imminent danger of harm or he is entitled to injunctive relief. His allegations that he is exposed to toxic black mold has been abjectly refuted by verified business records and declarations under oath establishing that no prisoner at FCI-Cumberland has been exposed to toxic black mold. Gorbey's claim that he is entitled to a lower

12

bunk is also refuted by verified records, medical assessments of Gorbey's capabilities with regard to his wrists, ankles, and knees, as well as repeated notification to Gorbey that he does not qualify for a lower bunk. There is no objective medical evidence to support Gorbey's claimed inability to use a top bunk without injury. The claim that Gorbey is somehow forced to have constantly wet feet because he does not wear proper shoes for his landscaping job also falls short of establishing an imminent danger of harm.

Gorbey was assessed for medically alternative shoes when he arrived at FCI-Cumberland and determined not to require same. The fact he was assessed differently at a different prison where the policy in place varied from the National BOP policy is not evidence that prison staff are intentionally attempting to inflict harm on Gorbey. Rather, it is evidence that a neutral policy has been applied to Gorbey's personal situation and enforced as written. Neutral enforcement of a neutral policy is the antithesis of an attempt to intentionally cause harm. In neither of these Civil Actions has Gorbey provided any evidence beyond his bald assertions that he has been denied treatment or assessment for glaucoma; rather, he simply relies on his conclusory statement that he should have been provided with an optometry appointment, but has not received it. *See Richardson v. Hite*, 53 Fed.Appx. 291 (4th Cir. Dec.23, 2002) (finding no "imminent danger" in allegation that inmate was being denied medication for his elevated cholesterol levels where inmate did not demonstrate that his cholesterol levels were necessarily dangerous or that medication was a medical necessity); *Richardson v. Joseph*, 2006 WL 1075160 (W.D. Va. April 21, 2006) (finding no "imminent danger" in allegation that doctor changed inmate's blood pressure medication without conducting a physical examination where inmate did not specify any adverse side effects he had experienced or allege facts indicating that the new medication was harmful).

13

Because Gorbey has failed to satisfy the imminent danger exception for either civil action, his Motions for Leave to Proceed in Forma Pauperis must be denied. Gorbey will be granted a brief amount of time to pay the remainder of the $400 filing fee[9] for these consolidated cases. If the remainder of the fee is not received by the date specified, both cases will be dismissed without prejudice. In the event Gorbey chooses not to pay the remainder of the fee, the Clerk of this Court will be directed to return the sum of $33.05 to Gorbey via the prison finance office as the initial partial fee that was inadvertently removed[10] from his prison account. All remaining motions filed by Gorbey seeking injunctive relief, sanctions and requesting this Court to consider evidence shall be denied. No further pleadings or motions shall be accepted for docketing in these civil actions unless and until the filing fee is paid in full.

A separate Order follows.

April 24, 2019
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[9] The Clerk will be directed to provide Gorbey with an account of payments received for payment of the filing fee in this case and shall note the date it was sent to Gorbey on the docket.

[10] *See* ECF 29 (Defendants' Response to Motion for Sanctions).

14